1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN HAYES, an individual,

        Plaintiff,

        v.

JOHN WICKERT and STEVE SAUNDERS,
in their individual capacities, and the TOWN
OF PE ELL, WASHINGTON,

        Defendants.

Case No.  C06-5402RJB

ORDER

This matter comes before the Court on Defendants' John Wickert and the Town Pe Ell's

Motion for Summary Judgment.  Dkt. 17-1.  The Court has considered the pleadings filed in support

of and in opposition to the motion and the file herein.

## I.  **PROCEDURAL AND FACTUAL BACKGROUND**

This case involves the use of deadly force by a police officer.  Dkt. 1-1.  On July 27, 2005, at

around 10:30 p.m., Defendant police officer, John Wickert, was on traffic patrol in a marked police car

in the Town of Pe Ell, Washington, when he noticed a 1994 Ford Escort with broken windows.  Dkt.

18, at 2.  Plaintiff, who was the driver, and two other men were in the car.  Dkt. 25-6, at 1.  Plaintiff

ran a stop light.  *Id.*  Officer Wickert pulled up behind Plaintiff, and began to follow him.  Dkts. 18, at

2 and 25-6, at 1.  Plaintiff alleges that at the end of town he accelerated.  Dkt. 25-6, at 1-2.  Parties do

not dispute that at some point Officer Wickert turned on his lights, and indicated that he wanted

1   Plaintiff to stop.  Dkts. 18, at 2 and 25-6, at 2.  Plaintiff did not stop, but continued down State Route

2   6 for around 2 to 2½ miles.  *Id.*  Officer Wickert alleges, and Plaintiff does not deny, that Plaintiff

3   reached speeds of 80 to 90 mph during the chase, did not have his lights on, and frequently crossed

4   into the oncoming lane in order to take curves without slowing down.  Dkt. 18, at 2.

5           Plaintiff then tried to pull off onto a gravel road.  Dkt. 25-6, at 2.  The parties' version of

6   events diverges at this point.  According to Plaintiff, he took the corner too fast and came to a stop

7   with his front tires at the edge of a ditch on the gravel road.  Dkt. 25-6, at 2.  He alleges that he put

8   the car in reverse, and backed up 12 to 18 inches.  *Id.*  Plaintiff alleges that Officer Wickert arrived

9   after he put the car in reverse.  *Id.*  He states that he placed his hands outside the window.  *Id.*

10  Plaintiff alleges that Officer Wickert got out of his car and immediately began to fire shots.  *Id.*

11  Plaintiff claims that he ducked down and stepped on the accelerator.  *Id.*  He alleges he was

12  accelerating away from Officer Wickert when he was shot in his left shoulder.  *Id.*

13          Officer Wickert alleges that after the Escort veered off onto the gravel road, he stopped 10 feet

14  behind the car.  Dkt. 18, at 2.  Officer Wickert states that he got out of his car and moved to the front

15  of his car, using the rear window post on the driver's as cover.  *Id.*  He drew his gun, and told Plaintiff

16  to turn off his car.  *Id.*  Officer Wickert alleges that Plaintiff put the car in reverse and began to

17  accelerate, as the passengers ducked.  *Id.*, at 3.  Officer Wickert, yelled "stop or I will shot!," and then

18  fired three shots into the Escort.  *Id.*  Parties do not dispute that Plaintiff continued down the highway,

19  and was eventually stopped.  Dkts. 18, at 2 and 25-6, at 3.  Plaintiff was taken to a hospital.  *Id.*

20  Plaintiff pled guilty to eluding a police officer in violation of RCW 46.61.024, a felony, and received

21  an exceptional sentence.  Dkt. 20, at 41-63.

22          In his Complaint, Plaintiff alleges the following claims:  1) 42 U.S.C. § 1983 against Officer

23  Wickert, 2) assault and battery against Officer Wickert, 3) 42 U.S.C. § 1983 against Officer Steve

24  Saunders, Officer Wickert's supervisor, 4) negligence against Officer Saunders, and 5) 42 U.S.C. §

25  1983 against the Town of Pe Ell.  Dkt. 1-1, at 4-6.

26          Defendants now move for summary judgment arguing that the 42 U.S.C. § 1983 claim against

27  Officer Wickert should be dismissed because he is entitled to qualified immunity.  Dkt. 17-1.

28  Defendants argue that 1) Officer Wickert's attempt to stop Plaintiff did not violate Plaintiff's

constitutional rights, 2) Officer Wickert's use of force did not violate Plaintiff's constitutional rights, and 3) Officer Wickert could reasonably have believed his use of deadly force was lawful. *Id.*, at 5-10. Defendants argue that Plaintiff's state law claims of assault and battery against Officer Wickert should be dismissed because the actions taken here were not "unlawful." *Id.*, at 10. Defendants argue that Plaintiff's § 1983 claims and negligence claims against Officer Saunders should be dismissed because he was not personally involved in the incident, is sued in his capacity as the Town of Pe Ell's marshal, is on active military duty and unable to respond, and Plaintiff's constitutional rights were not violated. Dkt. 17-1, at 1. Defendants argue that Plaintiff's § 1983 claim against the Town of Pe Ell should be dismissed because no violation of his constitutional rights occurred. Dkt. 17-1, at 13.

Plaintiff responds, arguing that Officer Wickert is not entitled to qualified immunity because 1) the facts show that Officer Wickert's use of deadly force constituted a violation of the Fourth Amendment where the pursuit left the public highway, and Plaintiff had not engaged in threatening conduct, and 2) Officer Wickert could not have believed that deadly force was justified. Dkt. 25-1, at 5-11. Plaintiff argues that his state law claim should not be dismissed because an officer in Officer Wickert's position at the time of the shooting would not have concluded that the use of deadly force was reasonable under the circumstances. *Id.*, at 11. Lastly, Plaintiff argues that his § 1983 claim against the Town of Pe Ell should not be dismissed because Plaintiff's Constitutional rights were violated. *Id.*

Defendant replies, and argues that :1) Plaintiff does not dispute that Officer Wickert's pursuit and attempt to stop Plaintiff was lawful, 2) Officer Wickert's use of deadly force was reasonable, 3) Officer Wickert could have reasonably believed that his use of deadly force was lawful, 4) Plaintiff's state law claims should be dismissed because no unlawful action occurred, and 5) the claim against Pe Ell should be dismissed. Dkt. 26.

## II.   <u>DISCUSSION</u>

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The

moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B.   QUALIFIED IMMUNITY FOR OFFICER WICKERT ON § 1983 CLAIM

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"A private right of action exists against police officers who, acting under the color of state law,

1   violate federal constitutional or statutory rights." *Jackson v. City of Bremerton*, 268 F.3d 646, 650

2   (9th Cir. 2001) *citing* 42 U.S.C. § 1983.  "The Supreme Court has established a two-part analysis for

3   determining whether qualified immunity is appropriate in a suit against an officer for an alleged

4   violation of a constitutional right." *Boyd v. Benton County*, 374 F.3d 773, 778, (9th Cir. 2004) (*citing*

5   *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A court required to rule upon qualified immunity must

6   examine (1) whether the officers violated the plaintiff's constitutional rights on the facts alleged and

7   (2) if there was a violation, whether the constitutional rights were clearly established.  *Id.* (internal

8   citations omitted).  As to the first inquiry, where "no constitutional right would have been violated

9   were the allegations established, there is no necessity for further inquiries concerning qualified

10  immunity."  *Saucier* at 201.  As to the second inquiry, "[i]f the law did not put the officer on notice

11  that his conduct would be clearly unlawful, summary judgment based on qualified immunity is

12  appropriate." *Id.* at 202.

13         **1**.    **Attempted Stop**

14              a.    <u>Constitutional Violation</u>

15         Pursuant to the Fourth Amendment of the U.S. Constitution, Plaintiff has the right "to be

16  secure . . . against unreasonable searches and seizures."  Police officers need "reasonable suspicion" to

17  effect an investigatory traffic stop.  *United States v. Miguel,* 368 F.3d 1150, 1153 (9th Cir.

18  2004)(*internal citation omitted*).  "Reasonable suspicion is formed by specific, articulable facts which,

19  together with objective and reasonable inferences, form the basis for suspecting that the particular

20  person detained is engaged in criminal activity." *Id.* (internal quotation marks omitted).

21         Viewing the facts in a light most favorable to Plaintiff, as is required under *Saucier*, Officer

22  Wickert had grounds to stop Plaintiff.  Plaintiff does not dispute that he ran a stop sign, in violation of

23  RCW 46.61.050 (duty to obey traffic signs), nor does he dispute that he began speeding, in violation

24  of RCW 46.61.400, after Officer Wickert began following him.  To the extent Plaintiff is claiming that

25  Officer Wickert violated his constitutional rights in attempting to stop him, Officer Wickert is entitled

26  to qualified immunity because he had enough reasonable suspicion to stop Plaintiff.

27              b.    <u>Clearly Established Right</u>

28         "The second part of the Saucier analysis asks whether the plaintiff's constitutional right was

1   clearly established at the time of the injury." *Boyd* at 780.  Because Plaintiff failed to establish a

2   violation of his constitutional rights as to the stop, further inquiry is not necessary.  *See Saucier* at 201

3           **2.     Excessive Force**

4                   a.      <u>Constitutional Violation</u>

5           The first inquiry under *Saucier* is whether a constitutional right was violated.  "Under the

6   Fourth Amendment, officers may only use such force as is objectively reasonable under the

7   circumstances." *Boyd* at 778.  "Determining whether a particular use of force is reasonable requires

8   the fact-finder to balance the nature and quality of the intrusion on the individual's Fourth Amendment

9   interests against the countervailing government interests at stake." *Id.* at 778-779.  Accordingly,

10  "[t]his balance must be judged from the perspective of a reasonable officer on the scene, rather than

11  with the 20/20 vision of hindsight.  The need for such balancing means that summary judgment in

12  excessive force cases should be granted sparingly." *Id.*  Consideration of "reasonableness must

13  embody allowance for the fact that police officers are often forced to make split-second judgments in

14  circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is

15  necessary in a particular situation." *Jackson* at 651.

16          *Graham v. Connor*, 490 U.S. 386, 396 (1989), lists factors relevant to the merits of an

17  excessive force claim: "requiring careful attention to the facts and circumstances of each particular

18  case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

19  safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest

20  by flight."

21          The severity of the crimes at issue here weighs against holding that shooting Plaintiff was

22  reasonable.  The undisputed facts indicate that Plaintiff violated various traffic laws: he ran a stop sign,

23  was speeding, was driving without his lights at night in an apparently unpopulated area, and was

24  driving into the oncoming lanes to avoid having to take curves, as well as the felony of eluding a police

25  officer.

26          The next factor to consider in determining whether an officer's use of force was reasonable is

27  examining whether the suspect posed an "immediate threat to the safety" to Officer Wickert or others.

28  Officer Wickert argues that he opened fire because he felt Plaintiff was attempting to hit him when he

backed the car up after losing control on the gravel road.  However, there are issues of fact as to whether Officer Wickert's safety was threatened.  In the Plaintiff's version of events, he had already backed the car up before Officer Wickert arrived at the gravel road.  Because the Court must "take the facts in the light most favorable to the party asserting the injury," *Saucier* at 201, Officer Wickert is unable, for the purposes of this motion, to establish that his use of force was reasonable because he feared serious injury or death.

Officer Wickert also argues that his use of force was reasonable because he feared for the safety of others based on Plaintiff's speeding, driving without lights at night, and his driving into oncoming lanes of traffic (reckless driving).  Considering all the facts and circumstances, Officer Wickert is unable, for the purposes of this motion, to establish that his use of force was reasonable because he feared an "immediate threat" to the safety of others.  *Graham* at 396.  The record is silent on whether there were any people nearby.  The record does indicate that these events took place at night.  Officer Wickert points to *Brosseau v. Haugen,* 543 U.S. 194 (2004) in support of his position that his use of force was reasonable because he was concerned about the safety of others.  Dkt. 17-1, at 9.  In *Brosseau*, the Supreme Court affirmed this Court's judgment, and found that a police officer was entitled to qualified immunity because prior case law did not "clearly establish" that the police officer's conduct violated the Fourth Amendment.  *Id*. at 201.  However, at this stage in the inquiry the Court is examining whether a constitutional violation occurred, not whether the violated right was clearly established.  The Supreme Court did not address the first factor under *Saucier,* whether Haugen's constitutional rights had been violated, in that case.  In any event, the factual setting in *Brosseau* was different then in the instant case.  There, police were called to neighborhood during day to respond to a fight between Haugen and two other men at Haugen's mother's house.  *Id*. at 196.  When the police arrived Haugen fled.  *Id*.  After a search, Haugen ran back to his mother's front yard and jumped into a Jeep, parked in the driveway, which was facing an occupied car, also parked in the driveway.  *Id.*, at 196.  There was another occupied vehicle parked behind the car.  *Id*.  An officer ran up to the Jeep, pulled her gun and ordered Haugen out of the vehicle.  *Id.*  The police officer broke the driver's side window and tried, but failed, to get the keys.  *Id.*  As the Jeep started, or shortly after it began to move, the officer jumped back and to the left and fired on shot at Haugen.  *Id*. at 196-197.

The officer there explained that she shot Haugen because she was "fearful for the other officers on foot who she believed were in the immediate area, for the occupied vehicles in Haugen's path, and for any other citizens who might be in the area." *Id*. at 197. Here, unlike in *Brosseau*, there is no evidence that there were other people in the area, much less that there was an "immediate" threat to their safety. Accordingly, this factor, at this stage in the case, weighs against a finding that Officer Wickert's use of force was reasonable here. At least, there are material issues of fact.

The final factor in considering whether Officer Wickert's use of force was reasonable is a consideration of whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. Here, viewing the facts in a light most favorable to the Plaintiff, Plaintiff was not actively resisting arrest. He was attempting to evade arrest, and he alleges that Officer Wickert's shot entered his shoulder as he was accelerating away. This factor also weighs against a finding that Officer Wickert's use of deadly force reasonable.

### b.   Clearly Established Constitutional Right

The next step under *Saucier* in determining if Officer Wickert is protected by qualified immunity, is to ascertain if Plaintiff's constitutional right was clearly established at the time of the injury. *Saucier* at 201. In excessive force cases, the inquiry is whether "under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable." *Boyd* at 781; *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003).

Under the circumstances alleged, a reasonable officer would have had fair notice that shooting an individual suspected of violating traffic laws and eluding police was unlawful. There are issues of fact as to when Plaintiff began backing his car, and if Plaintiff version of events is believed, Officer Wickert jumped out of his patrol car and immediately began firing shots. Under those circumstances, Officer Wickert could not reasonably have believed his safety was endangered, and would have fair notice that shooting Plaintiff was unlawful. Moreover, unlike in *Brosseau*, or the other cases cited by Officer Wickert, the record does not contain evidence that there were others in the area who's safety was immediately threatened. A reasonable officer, under the facts alleged by Plaintiff, would have reasonable fair notice that shooting the Plaintiff here was unlawful.

At this stage in the litigation, Officer Wickert's motion to be found immune from suit based on qualified immunity should be denied without prejudice.

### C.    CLAIM AGAINST THE TOWN OF PE ELL

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). The municipal action must be the moving force behind the injury of which plaintiff complains. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

#### 1.    Attempted Stop

As above, Officer Wickert had grounds to attempt to stop Plaintiff. To the extent that plaintiff alleges that Officer Wickert violated his constitutional rights by trying to stop him, this claim should fail because no constitutional violation occurred. As neither a municipality nor a supervisor can be held liable under § 1983 where no injury or constitutional violation has occurred, *Jackson* at 653, this claim should be dismissed with prejudice.

#### 2.    Excessive Force

Plaintiff has not presented evidence from which a jury could conclude that either the Town of Pe Ell should be held liable for the alleged use of excessive force. Plaintiff does not point to any official custom, pattern or policy that permits deliberate indifference to, or violates his constitutional rights. Plaintiff does not allege the Town of Pe Ell ratified Officer Wickert's conduct. Plaintiff has failed to allege facts which, if true, would support an excessive force claim against the Town of Pe Ell. The § 1983 claim against the Town of Pe Ell should be dismissed with prejudice.

### D.    ASSAULT AND BATTERY CLAIM AGAINST OFFICER WICKERT

Plaintiff's assault and battery claim flows from the alleged use of excessive force. Dkt. 1. Defendants argue that Officer Wickert is entitled to state qualified immunity as to this claim. Dkt. 17-1, at 12. Washington State law provides qualified immunity to police officers. *Staats v. Brown*, 139 Wash.2d 757, 779 (2000). Under Washington law, an officer has qualified immunity from suit where

1    the officer "1) carries out a statutory duty, 2) according to the procedures dictated to him by statute

2    and superiors, and 3) acts reasonably." *Id.* at 778.

3            Here, Parties do not dispute that Officer Wickert was carrying out his statutory duty when he

4    attempted to stop Plaintiff for violating the state traffic laws.  Plaintiff argues that Officer Wickert

5    violated the Town of Pe Ell's police procedures manual, section 404, which forbids high-speed pursuit

6    if the pursuit poses a danger to the officer, suspect, or public.  Dkt. 25-1, at 7.  Plaintiff fails to show

7    how this argument is connected to his assault and battery claim. The Town of Pe Ell's police policy

8    regarding shooting at vehicles states that, "[f]iring at or from moving vehicles is generally prohibited.

9    Experience shows that such action is rarely effective and extremely hazardous to innocent persons."

10   Dkt. 25-4, at 5.  However, Washington statute RCW 9A.16.040(1) permits the use of deadly force in

11   the following circumstances: "(b) [w]hen necessarily used by a peace officer to overcome actual

12   resistance to the execution of the legal process, mandate, or order of a court or officer, or in the

13   discharge of a legal duty" or "(c) [w]hen necessarily used by a peace officer . . . (i) To arrest or

14   apprehend a person who the officer reasonably believes has committed, has attempted to commit, is

15   committing, or is attempting to commit a felony."  RCW 9A16.040 further provides that,

16           (2) In considering whether to use deadly force under subsection (1)(c) of this section,
             to arrest or apprehend any person for the commission of any crime, the peace officer
17           must have probable cause to believe that the suspect, if not apprehended, poses a threat
             of serious physical harm to the officer or a threat of serious physical harm to others.
18           Among the circumstances which may be considered by peace officers as a "threat of
             serious physical harm" are the following: (a) The suspect threatens a peace officer with
19           a weapon or displays a weapon in a manner that could reasonably be construed as
             threatening; or (b) There is probable cause to believe that the suspect has committed
20           any crime involving the infliction or threatened infliction of serious physical harm.
             Under these circumstances deadly force may also be used if necessary to prevent escape
21           from the officer, where, if feasible, some warning is given.

22           There are issues of fact as to whether Officer Wickert followed city policy and state statues

23   regarding the use of force.  As above, there are issues of fact as to whether plaintiff was backing into

24   Officer Wickert, or whether, as Plaintiff alleges, Officer Wickert immediately jumped out of his car and

25   began shooting at Plaintiff and his passengers the second the Officer came to the gravel road.  As a

26   result, there are issues of fact as to whether there was a "threat of serious physical harm" to Officer

27   Wickert.  Additionally, the facts, viewed in a light most favorable to the Plaintiff, are controverted as

28   to whether Plaintiff's driving constituted a "threat of serious physical harm" to others in the

circumstances.  Due to the various factual accounts, whether Officer Wickert's actions were reasonable are determinations best left to the fact finder.  Officer Wickert's motion for a grant of qualified immunity and a dismissal of Plaintiff's state law claim of assault and battery should be denied.

### E.     CLAIMS AGAINST OFFICER SAUNDERS

Plaintiff makes a § 1983 claim against Officer Saunders, and a claim alleging that he was "negligent in the hiring, supervision, and training of" Officer Wickert.  Dkt. 1-1, at 5.  Although Defendants argue that a determination that no constitutional violation occurred is dispositive of the claims asserted against Officers Saunders, Defendants cite no authority to support this position.  Dkt. 17-1, at 1.  Additionally, Officer Saunders did not join in the motion.  The Court notes, however, that Officer Saunders is on active military duty.  Dkt. 17-1, at 1.  The Complaint states that the claims against Officer Saunders are made against him in his in his personal capacity.  The Court is concerned about the implications of the Soldiers' and Sailors' Civil Relief Act of 1940.  50 U.S.C. App. §§ 501-525.

### III.     ORDER

Therefore, it is hereby

**ORDERED** that, Defendants' Officer Wickert and the Town of Pe Ell's Motion for Summary Judgment (Dkt. 17-1) is **GRANTED, IN PART, AND DENIED WITHOUT PREJUDICE, IN PART**, as follows:

- Defendants' Motion for Summary Judgment (Dkt. 17-1) is **GRANTED** as to the conduct of Officer Wickert on Plaintiff's claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights regarding the attempted stop but **DENIED WITHOUT PREJUDICE** as to Plaintiff claim against Officer Wickert under 42 U.S.C. § 1983 for use of excessive force;
- Defendants' Motion for Summary Judgment (Dkt. 17-1) is **GRANTED** as the Town of Pe Ell on Plaintiff's claim under 42 U.S.C. § 1983;
- Defendants' Motion for Summary Judgment (Dkt. 17-1) is **DENIED WITHOUT PREJUDICE** as to Plaintiff's assault and battery claim against Officer Wickert.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to

1  any party appearing *pro se* at said party's last known address.

2

3       DATED this 20th day of November, 2006.

4

5

6       ROBERT J. BRYAN
        United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 12